UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                                  No. 3:12-cr-00150-UATC-JBT

TIMOTHY F. MOBLEY

### UNITED STATES' SENTENCING MEMORANDUM

The United States of America, through undersigned counsel, hereby submits its position on the sentencing of defendant Timothy F. Mobley, in accordance with § 6A1.2 of the United States Sentencing Guidelines (U.S.S.G.). Based on an appropriate calculation under the advisory Guidelines and a review of the applicable sentencing factors under 18 U.S.C.§ 3553(a), the Court should impose a total sentence of 10 to 16 months, including a period of incarceration of no less than **5 to 8 months**. Pursuant to 2 U.S.C. § 437g(d)(1)(D), however, if the Court elects not to impose a custodial sentence as to Count One of the Information, the defendant is subject to a mandatory minimum fine of no less than **$189,600**.

**I.     Procedural Background and Summary of the Factual Basis for the Defendant's Plea**

On September 11, 2012, the defendant was charged by Information with two felony violations of the Federal Election Campaign Act (FECA), stemming from his orchestration and execution of an unlawful scheme to reimburse campaign contributions to two federal political committees—Committee A, the federal campaign committee associated with the re-election bid of an individual identified as "Federal Elected Official A,"[1] and the federal committee organized by the Republican Party of Florida (RPOF). Dkt. No. 1 ¶¶ 1-3, 10-21. Pursuant to this scheme, between

---

[1] The defendant has identified the official as Congressman Vernon Buchanan, a member of the United States House of Representatives. Dkt. No. 21 (Def. Sent. Memo.) at 2, 6.

**EXHIBIT B**

March 2006 and October 2008, the defendant, a prominent real estate developer in the Tampa area, used employees of his business entities and their family members "as prohibited conduits through which to funnel his own money and corporate funds to Committee A and the RPOF under the guise of lawful campaign contributions," id. ¶ 10, in violation of 2 U.S.C. § 441f, which prohibits conduit contributions, and 2 U.S.C. § 441b, which prohibits using corporate money to make federal campaign contributions. In this manner, the defendant funded unlawful contributions totaling $8,300 in 2006, $23,000 in 2007, and $63,200 in 2008. Id. ¶¶ 16-18.

As a result of the defendant's scheme, he unlawfully circumvented the strict limits on individual contributions, and, in doing so, caused both Committee A and the RPOF to file materially false contribution reports with the Federal Election Commission (FEC). Id. ¶ 19. Although the defendant was the true source of the contributions, each required report falsely identified the conduits as the donors, thereby obscuring from public scrutiny the extent of his influence over the electoral process. Id. ¶¶ 12-13.

On September 27, 2012, the defendant pleaded guilty—pursuant to a plea agreement with the government, Dkt. No. 13 (Plea Agreement)—to both counts charged in the Information, admitting each of the factual allegations supporting the charges. Dkt. No. 9.[2] Although the counts of conviction focused on the defendant's conduct during calendar year 2008, he also admitted his involvement in the conduit scheme for 2006 and 2007. Plea Agreement at 19-23 (Factual Basis). Following a report and recommendation from Magistrate Judge Toomey, Dkt. No. 16, the Court

---

[2] In a related case, the defendant's brother-in-law and accountant for his business entities, Timothy M. Hohl, pleaded guilty on the same day to three misdemeanor violations of 2 U.S.C. § 441f, arising from his assistance in executing the defendant's scheme in each of the years 2006, 2007, and 2008. 3:12-cr-149-UATC-JBT, Dkt. No. 8. On January 23, 2013, the Court sentenced Hohl to a period of probation and a fine of $15,000. Dkt. No. 18.

accepted the defendant's guilty plea on October 4, 2012. Dkt. No. 17.

## II. Argument

### A. The Sentencing Guidelines

Although the Supreme Court rendered the federal Sentencing Guidelines advisory in United States v. Booker, 543 U.S. 220 (2005), a sentencing court is still required to "'consult [the] Guidelines and take them into account when sentencing.'" United States v. Pugh, 515 F.3d 1179, 1188 (11th Cir. 2008) (quoting Booker, 543 U.S. at 264). The Supreme Court has directed that district courts "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." Gall v. United States, 128 S. Ct. 586, 597 (2007). However, the sentencing court "may not presume that the Guidelines range is reasonable." Nelson v. United States, 129 S. Ct. 890, 892 (2009). The "Guidelines should be the starting point and the initial benchmark," but the sentencing court must also "consider all of the § 3553(a) factors" in determining the appropriate sentence. Id.. Ultimately, the sentence imposed must meet a standard of reasonableness. Booker, 543 U.S. at 260-61.

Pursuant to the Plea Agreement in this matter, the parties have stipulated to the following Guidelines calculation:

| | | |
|---|---|---|
| Base Offense Level – § 2C1.8 | | 8 |
| "Loss" Amount Between $30,000 and $70,000 – § 2B1.1(b)(1)(D)[3] | + | 6 |
| Acceptance of Responsibility – § 3E1.1(a) | – | 2 |
| **Total Offense Level** | | **12** |

---

[3] As the Presentence Investigation Report (PSR) correctly notes, the Plea Agreement contains an inadvertent reference to § 2B1.1(b)(1)(E), PSR at 4 n.1; the correct Guidelines provision corresponding to the illegal transactions in 2008, however, is § 2B1.1(b)(1)(D).

3

Plea Agreement at 5-7. Based on the parties' stipulation to a total offense level of 12, the range of imprisonment is 10 to 16 months, at least half of which should be satisfied by imprisonment. U.S.S.G. § 5C1.1(d).

In contrast, although Counts One and Two concern only the 2008 conduct, the PSR includes the unlawful contributions from 2006 and 2007 as relevant conduct, increasing the total amount of illegal contributions to between $70,000 and $120,000. PSR at 7-10. The PSR therefore includes an additional 2-level enhancement under § 2B1.1(b)(1)(E), resulting in a total offense level of 13 (including applicable credit for acceptance of responsibility) and a period of incarceration of 12 to 18 months. Id. at 10.

Although the government does not quarrel with the PSR's reliance on the 2006 and 2007 contributions as relevant conduct, it nonetheless is bound by its agreement with the defendant. As such, the government recommends a Guidelines range, consistent with the Plea Agreement, of between 10 and 16 months. Plea Agreement at 7-8 ("Provided that the defendant complies fully with the Plea Agreement, at the time of sentencing the government agrees to recommend a sentence within the Stipulated Guidelines Range of ten (10) to sixteen (16) months of incarceration.").

### B.   The § 3553(a) Factors Support Imposition of a Guidelines Sentence

Review of the applicable statutory sentencing factors codified in 18 U.S.C. § 3553(a) supports imposing a sentence that is consistent with the stipulated Guidelines range for the defendant.[4]

---

[4] Pursuant to § 3553(a), courts should consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the Sentencing Guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted disparities; and (7) the need to provide restitution to victims of the offense. 18 U.S.C. § 3553(a)(1)-(7).

1.  **The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense**

The defendant's conduct in this case was extremely serious. Occurring over a period of more than two years, he repeatedly abused his position as an employer by recruiting his employees and some of their family members to make conduit contributions. His conduct was far from aberrant: on multiple occasions throughout the duration of the scheme, the defendant reimbursed the contributions of no fewer than eleven different individuals, most of whom were dependent upon him for their livelihoods. PSR at 7-8. To help execute his scheme, the defendant took advantage of his relationship with not only Hohl, but also another employee, whom he tasked to solicit contributions from other potential conduits. Id. at 8. In doing so, the defendant repeatedly breached the most important component of the employer-employee relationship: trust.

More importantly, the defendant's conduit scheme undermined one of the core goals of the federal campaign finance laws—transparency. Indeed, Congress imposed limits on individual contributions to candidates for the express purpose of limiting the influence of any single donor on the outcome of an election. Plea Agreement at 20. To promote transparency and prevent well-funded individuals like the defendant from circumventing these limits, the legislature prohibited conduit contributions. Id. As a further means to instill public confidence in the electoral process, Congress also required that federal committees—including Committee A and the RPOF—file contribution reports with the FEC, specifying the name, address, and occupation of each contributor, among other information. Id. Once filed, these reports are made available for public inspection, so that ordinary citizens can see who is supporting each candidate or committee. Id.

As a result of his scheme, the defendant distorted this electoral process. Having reimbursed contributions to Committee A and the RPOF and caused each committee to file false reports with the FEC, the defendant deprived the public of its right to know who was funding campaigns and to what extent. The defendant's conduct clouded a process that Congress has painstakingly sought to keep transparent. As such, the scope of the defendant's conduct and the serious risk to the proper functioning of the campaign process, see 18 U.S.C § 3553(a)(1) & (2)(A), support imposition of a Guidelines sentence.

### 2. The Need for the Sentence to Promote Respect for the Law and to Afford Adequate Deterrence

A sentence within the stipulated Guidelines range also is necessary to promote respect for the law and to deter others from engaging in similar criminal activity. Although the risk of recidivism is quite low in this case, the general deterrent effect for other would-be offenders cannot be overstated. As even the defendant's sentencing memorandum makes clear, Def. Sent. Memo. at 10-13, the problem of conduit contribution schemes is not going away.[5] Without the cooperation

---

[5] Although the defendant attempts to justify his request for a non-custodial sentence by listing numerous campaign-finance prosecutions from around the country (some of which actually resulted in prison sentences), Def. Sent. Memo. at 11-13, he fails to articulate how the facts of his case render him similarly situated with respect to each of those defendants. Cf. United States v. Docampo, 573 F.3d 1091, 1101 (11th Cir. 2009) ("A well-founded claim of disparity [under § 3553(a)(6)] . . . assumes that apples are being compared to apples." (internal quotation marks omitted)). Indeed, the defendant's reliance on the FEC's civil action against Sam Kazran—which the defendant claims involves "striking similarities" to this case, Def. Sent. Memo. at 2, 9-10—underscores the weakness of his disparity argument. According to the civil judgment in the Kazran matter, Kazran admitted to a "non-knowing and non-willful violation of 2 U.S.C. § 441f." Def. Sent. Memo. Ex. 2 at 3 (emphasis added). In other words, Kazran, who had no idea that his conduct was improper, id. at 2, lacked criminal intent. The defendant, by contrast, has admitted to knowingly and willfully violating FECA's bans on conduit and corporate contributions. Plea Agreement at 2 ("[T]he defendant acted voluntarily and was aware that his conduct was unlawful."); id. at 23 ("Defendant MOBLEY engaged in the conduct described above knowingly and willfully and not because of accident, mistake, or other innocent

of someone involved in the scheme, uncovering such conduct frequently proves exceedingly difficult, with many offenses going undetected and their perpetrators unpunished. Moreover, in light of the fact that many individuals who commit campaign finance offenses are, like the defendant, wealthy, the prospect of a non-custodial or fine-based punishment is hardly an adequate deterrent. Put differently, with the risk of detection generally low and the likelihood of a prison sentence even lower, well-heeled individuals are unlikely to be deterred from committing campaign-finance offenses.

Likewise, a custodial sentence would promote respect for the law. In light of the prevalence of campaign-finance offenses, a term of imprisonment would help ensure respect for Congress's mandate, as embodied in FECA, that federal elections in the United States remain as transparent and free from private influence as possible. Lack of respect for these laws undermines the promise of open elections and the ideal that our elected representatives are chosen by the many, not by the few. In sum, the nature of the defendants' conduct underscores the need for a Guidelines period of incarceration as a means both to promote respect for the law and to deter future abuses by other individuals seeking improperly to influence the electoral process. 18 U.S.C. § 3553(a)(2)(A) & (a)(2)(B).

### C. If the Court Does Not Impose a Period of Incarceration as to Count One, FECA Requires a Fine of at Least $189,600.

In the event that the Court chooses to impose a non-custodial sentence, Title 2 requires a mandatory minimum fine as to the conduit-contribution charge in Count One. To that end, pursuant to FECA's penalty provision, a conduit-contribution conviction under 2 U.S.C. § 441f requires

---

reason."). As such, the Kazran matter provides insufficient justification for a disparity-basis variance from the stipulated Guidelines range.

imposition of punishment as follows:

> Any person who knowingly and willfully commits a violation of section 441f of this title involving an amount aggregating more than $10,000 during a calendar year shall be –
>
> (i) imprisoned for not more than 2 years if the amount is less than $25,000 (and subject to imprisonment [of not more than 5 years] if the amount is $25,000 or more);
>
> (ii) fined <u>not less than</u> 300 percent of the amount involved in the violation and not more than the greater of –
>
>> (I) $50,000; or
>> (II) 1,000 percent of the amount involved in the violation;
>
> or
>
> (iii) both imprisoned under clause (i) and fined under clause (ii).

2 U.S.C. § 437g(d)(1)(D) (emphasis added). In other words, the statute requires that a defendant convicted of a § 441f offense be sentenced to (1) a term of imprisonment of not more than two or five years, depending on the amount involved in the violation; (2) a mandatory minimum fine of at least 300 percent of the amount involved; or (3) both. As a result, with respect to Count One, if the Court varies below the advisory Guidelines range and declines to impose a period of incarceration—thereby eliminating the first and third sentencing options under § 437g(d)(1)(D)—the law mandates a minimum fine of 300 percent of the amount involved in the count of conviction.[6] Because the defendant reimbursed contributions totaling $63,200 during calendar year 2008, the appropriate fine amount is $189,600. <u>See also</u> Plea Agreement at 3 ("[P]ursuant to 2 U.S.C. § 437g(d)(1)(D), Count 1 carries a fine of not less than 300 percent of the amount involved in the

---

[6] Count Two, which charges a violation of the ban on corporate contributions, 2 U.S.C. § 441b, does not require a minimum fine. <u>See</u> 2 U.S.C. 437g(d)(1)(A)(i) (cross-referencing Title 18 fine provision); 18 U.S.C. § 3571 (imposing maximum fine of $250,000).

violation and not more than the greater of $50,000 or 1,000 percent of the amount involved in the violation."), id. at 7 ("In addition, the parties agree that pursuant to 2 U.S.C. § 437g(d)(1)(D)(ii), the applicable fine range is $189,600 to $630,200.");[7] PSR at 5, 17.

### III. Conclusion

For the foregoing reasons, the Court should sentence the defendant based on the advisory Guidelines and application of the § 3553(a) factors to a total period of 10 to 16 months, including at least **5 to 8 months** of imprisonment. As to Count One, if the Court does not impose a period of incarceration, 2 U.S.C. § 437g(d)(1)(D) requires a fine of at least **$189,600**.

Respectfully submitted,

JACK SMITH
Chief, Public Integrity Section

By:   s/ Eric G. Olshan
ERIC G. OLSHAN
Trial Attorney
Illinois Bar No. 6290382
Public Integrity Section
United States Department of Justice
1400 New York Ave. NW
Suite 12100
Washington, D.C. 20005-2107
Telephone:   (202) 514-7621
Facsimile:   (202) 514-3003
E-mail:   eric.olshan@usdoj.gov

---

[7] The plea agreement contains an arithmetic error, insofar as 1,000 percent of $63,200 is $632,000—not $630,200.

CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will provide notice to all counsel of record in this matter.

                                            s/ Eric G. Olshan
                                            ERIC G. OLSHAN
                                            Trial Attorney
                                            Illinois Bar No. 6290382
                                            Public Integrity Section
                                            United States Department of Justice
                                            1400 New York Ave. NW
                                            Suite 12100
                                            Washington, D.C. 20005-2107
                                            Telephone:   (202) 514-7621
                                            Facsimile:    (202) 514-3003
                                            E-mail:   eric.olshan@usdoj.gov