## BEFORE THE FEDERAL ELECTION COMMISSION

In the Matter of )
)
Centex Construction Group, Inc. )
Centex-Rooney Construction Co., Inc. )
Bob L. Moss )
Gary Esporrin )
Chris Genry )
Mark Layman )
Ken Bailey )
Brice Hill ) MUR 5357
Bruce Moldow )
Gary Glenewinkel )
D.J. McGlothern )
Albert Petrangeli )
Ted Adams )
J. Michael Wood )
Raymond C. Southern )
Larry D. Casey )
David Hamlin )

## CONCILIATION AGREEMENT

This matter was initiated by a sua sponte submission and a Complaint filed with the

Federal Election Commission ("the Commission") by Centex Corporation pursuant to

information ascertained in the normal course of carrying out its supervisory responsibilities.

*See* 2 U.S.C. §§ 437g(a)(1) and (2).  In the Complaint, Centex Corporation voluntarily disclosed

that it had discovered that a former senior executive had caused Centex Construction Group, Inc.

to reimburse various individuals for federal political contributions.  Based on the facts

voluntarily disclosed by Centex Corporation and other available information, the Commission

found reason to believe Centex-Rooney Construction Co., Inc., Centex Construction Group, Inc.,

Bob Moss, Gary Esporrin, Brice Hill, Ken Bailey, Chris Genry, and Mark Layman violated

2 U.S.C. §§ 441b(a) and 441f.  The Commission also found reason to believe that Bruce

# EXHIBIT I

Moldow, Ted Adams, Gary Glenewinkel, Albert Petrangeli, Raymond Southern, J. Michael Wood, D.J. McGlothern, Larry Casey and David Hamlin violated 2 U.S.C. § 441f.

NOW, THEREFORE, the Commission and the Respondents, having participated in informal methods of conciliation prior to a finding of probable cause to believe, do hereby agree as follows:

I. The Commission has jurisdiction over the Respondents and the subject matter of this proceeding, and this agreement has the effect of an agreement entered pursuant to 2 U.S.C. § 437g(a)(4)(A)(i).

II. Respondents have had a reasonable opportunity to demonstrate that no action should be taken in this matter.

III. Respondents enter voluntarily into this agreement with the Commission.

IV. The pertinent facts in this matter are as follows:

1. Centex Construction Group, Inc. (hereinafter "CCG") is a wholly owned subsidiary of Centex Corporation and operates as the umbrella organization for regional construction units, including Centex-Rooney Construction Co., Inc. (hereinafter "Rooney"). CCG is incorporated in Nevada and has headquarters in Dallas, Texas and Plantation, Florida. Brice Hill was Chairman, CEO and President of CCG from 1996 to 2000. Kenneth Bailey was Executive Vice President and COO of CCG from 1998 to 2001. Chris Genry was CFO of CCG from 1991 to 2000. Mark Layman was Co-CFO of CCG from 2000 to 2003, when he became the sole CFO of CCG.

2. Rooney is a construction company with commercial building projects primarily in the state of Florida. Rooney, which previously operated under the name Frank J.

3

Rooney Construction, was acquired by CCG in 1986. Rooney is incorporated in Florida and headquartered in Plantation, Florida.

3. Bob Moss was Chairman, President, and CEO of Rooney from 1986 to 2000. In early 2000, Mr. Moss was promoted to the position of Chairman and CEO of CCG while retaining his title of Chairman at Rooney.

4. Gary Esporrin was the CFO of Rooney from 1996 to 2003, and was promoted in January 2000 by Mr. Moss to co-CFO of CCG while retaining his position as CFO of Rooney. Although no longer CFO, Mr. Esporrin remains employed by CCG and Rooney.

5. Bruce Moldow was Executive Vice President and General Counsel of Rooney and Senior Vice President and Co-Chief Legal Officer of CCG during the applicable time period.

6. Gary Glenewinkel is Executive Vice President and Chief Operating Officer of Rooney.

7. D.J. McGlothern was Vice President and Business Unit Leader for the Tampa Operations of Rooney during the applicable time period.

8. Albert Petrangeli is President of Rooney.

9. Ted Adams is Senior Vice President and Criminal Justice Divisions Manager of Rooney.

10. J. Michael Wood is Executive Vice President and Chief Operating Officer for North/Central Florida Operations of Rooney.

11. Raymond C. Southern is Vice Chairman and Chief Executive Officer of Rooney.

12. David Hamlin is Senior Vice President and Chief Estimator at Rooney.

13. Larry D. Casey is Senior Vice President of Marketing and Sales at Rooney.

4

14. 2 U.S.C. § 441f prohibits: (1) making a contribution in the name of another; (2) knowingly permitting one's name to be used to effect such a contribution; and (3) knowingly accepting such a contribution. In addition, no person may knowingly help or assist any person in making a contribution in the name of another. 2 U.S.C. § 441f; 11 C.F.R. § 110.4(b)(1)(iii). This prohibition also applies to any person who provides the money to others to effect contributions in their names. 11 C.F.R. § 110.4(b)(2).

15. Corporations are prohibited from making contributions or expenditures from their general treasury funds in connection with any election of any candidate for federal office. 2 U.S.C. § 441b(a). In addition, section 441b(a) prohibits any officer or director of any corporation from consenting to any contribution or expenditure by the corporation. Section 441b(a) also makes it unlawful for any candidate, political committee, or other person knowingly to accept or receive a contribution prohibited by section 441b(a).

16. In March 1998, Bob Moss met with Brice Hill, at that time President and CEO of CCG, and Kenneth Bailey, former Executive Vice President and COO of CCG, to discuss the company's discretionary bonus program. In that conversation, Mr. Moss suggested that the company should compensate or reward Rooney employees for the political contributions made during the year. Mr. Moss suggested that individuals' political contributions could be recognized as a primary component of the discretionary bonus process paid out of a CCG account. Mr. Hill agreed that it would be appropriate to consider employee political contributions, as well as other political and community activities, in determining the amount of employee discretionary bonuses.

17. Rooney management thereafter took steps to encourage Rooney employees to inform either Mr. Moss or Mr. Esporrin of their federal, state and local political contributions and

to send copies of contribution checks to Mr. Moss or Mr. Esporrin. Employees understood that each of their political contributions for which they submitted a check to the company would be considered in determining their year-end bonus. Some, but not all, of the political contributions made by the employees were solicited by Rooney executive officers, including Bob Moss.

18. In accordance with his discussions with Mr. Moss, Mr. Esporrin calculated amounts that would reimburse each employee for his political contributions and grossed up the amounts to offset tax liability. These amounts were listed in a bonus spreadsheet under a new and separate column designated "discretionary management bonuses" and were added to the bonus amounts the employee otherwise would have received from any incentive plan. After review and adjustment when Mr. Moss deemed appropriate, Mr. Moss ultimately approved these discretionary management bonuses. The Rooney bonus pool was reviewed and approved by CCG. At various times, Brice Hill, Chris Genry and Mark Layman played a role in this review and approval. Respondent Layman contends that his role in consenting to the bonus pool components was limited to acquiescing in determinations previously made by Mr. Moss, pursuant to a program he understood to have been approved by Mr. Hill.

19. Fiscal Year 1998, which ran from April 1, 1997 through March 31 1998, was the first year that political contributions were reimbursed via the discretionary management bonus. This process continued until Fiscal Year 2003, when Centex Corporation reported this matter to the Commission. Between 1997 and 2002, $56,125 in federal political contributions were reimbursed with CCG funds to Bob Moss, Gary Esporrin, Bruce Moldow, Gary Glenewinkel, D.J. McGlothern, Albert Petrangeli, Ted Adams, J. Michael Wood, Raymond Southern, Larry Casey and David Hamlin.

20. Contemporaneous with his promotion to CEO of CCG, Mr. Moss met with the Chairman and CEO of Centex Corporation, in January 2000. During that meeting, Mr. Moss raised the issue of the company's political contribution strategy. Mr. Moss did not discuss the discretionary management bonus program with the CEO. The CEO told Mr. Moss to follow company guidelines and legal advice. After the meeting, Bob Moss informed certain CCG personnel that the discretionary management bonus program should be continued.

21. Bob Moss, or his spouse Sandra Moss, made $42,425 in political contributions in their own names to the federal committees indicated on the dates provided, for which Mr. Moss received reimbursement with corporate funds:

| | | |
|---|---|---|
| 07/25/1996 | Friends of Bob Graham Committee | $1,000 |
| 10/03/1997 | Friends of Clay Shaw | $250 |
| 12/14/1997 | Bill McCollum for Senate | $500 |
| 12/14/1997 [1] | Bill McCollum for Senate | $500 |
| 01/30/1998 | Friends of Bob Graham for Senate | $500 |
| 07/9/1998 [2] | Friends of Bob Graham for Senate | $1,000 |
| 09/16/1998 [3] | Friends of Bob Graham for Senate | $1,000 |
| 04/7/1999 | Friends of Clay Shaw | $1,000 |
| 04/8/1999 | Bill McCollum for Senate | $1,000 |
| 05/15/1999 | Florida Republican Party (Fed) | $5,000 |
| 06/17/1999 | Bush for President | $1,000 |
| 11/19/1999 | Bill McCollum for Senate | $500 |
| 12/28/1999 [4] | Bill McCollum for Senate | $500 |
| 12/28/1999 [5] | Bill McCollum for Senate | $500 |
| 3/27/2000 | Florida Republican Party (Fed) | $5,000 |
| 4/28/2000 [6] | Friends of Clay Shaw | $500 |
| 5/11/2000 [7] | Republican National Comm. | $20,000 |
| 10/3/2000 | Friends of Clay Shaw | $500 |
| 07/18/2001 | Friends of Clay Shaw | $175 |
| 03/20/2002 [8] | Friends of Clay Shaw | $2,000 |

[1] This contribution was made by Sandra Moss.
[2] No record of contribution receipt in candidate filings.
[3] This contribution was made by Sandra Moss.
[4] $500 of the original $1,000 contribution was reattributed to Sandra Moss.
[5] This contribution was made by Sandra Moss.
[6] Check records indicate Bob Moss made contribution. The campaign reported the contribution as made by Sandra Moss.
[7] Contribution was to the RNC Federal account.

22.  Gary Esporrin made $1,500 in political contributions in his own name to the federal committees indicated on the dates provided, for which he received reimbursement with corporate funds:

| | | |
|---|---|---|
| 11/30/1999 | Bill McCollum for Senate | $500 |
| 02/14/2000 | Tom Gallagher for U.S. Senate | $500 |
| 03/22/2002 | Friends of Clay Shaw | $500 |

23.  Bruce Moldow made $1,500 in political contributions in his own name to the federal committees indicated on the dates provided, for which he received reimbursement with corporate funds:

| | | |
|---|---|---|
| 11/19/1999 | Bill McCollum for Senate | $500 |
| 02/15/2000 | Tom Gallagher for U.S. Senate | $500 |
| 03/20/2002 | Friends of Clay Shaw | $500 |

24.  Gary Glenewinkel, or his spouse Kathryn Young Glenewinkel, made $5,200 in political contributions in their own names to the federal committees indicated on the dates provided, for which Mr. Glenewinkel received reimbursement with corporate funds:

| | | |
|---|---|---|
| 11/23/1999 | Bill McCollum for Senate | $500 |
| 12/09/1999 | ABC/PAC | $500 |
| 02/14/2000 | Tom Gallagher for U.S. Senate | $500 |
| 03/21/2000 [9] | Bill McCollum for Senate | $500 |
| 05/11/2000 | Friends of Clay Shaw | $1,000 |
| 9/28/2000 [10] | Bush for President | $100 |
| 10/11/2000 [11] | Friends of Clay Shaw | $1,000 |
| 03/21/2001 [12] | ABC/PAC | $100 |
| 03/20/2002 | Friends of Clay Shaw | $1,000 |

---

[8] Check records indicate Bob Moss made the contribution.  The campaign reported the contribution as made by Sandra Moss.

[9] This contribution was made by Kathryn Young Glenewinkel.

[10] Contribution did not require individual itemization in disclosure report.

[11] This contribution was made by Kathryn Young Glenewinkel.

[12] Contribution did not require individual itemization in disclosure report.

8

25. D.J. McGlothern made $1,000 in political contributions in his own name to the federal committees indicated on the dates provided. Gary Glenewinkel wrote a check to reimburse Mr. McGlothern for these contributions and submitted a copy of this check for inclusion in his FY 2000 bonus calculation, for which he received reimbursement from CCG and Rooney:

| | | |
|---|---|---|
| 10/15/1999 | Corrine Brown for Congress | $500 |
| 11/04/1999 | Bush for President | $500 |

26. Albert Petrangeli made $500 in political contributions in his own name to the federal committees indicated on the dates provided, for which he received reimbursement with corporate funds:

| | | |
|---|---|---|
| 03/21/2000 | Friends of Dave Weldon | $500 |

27. Ted Adams made $500 in political contributions in his own name to the federal committees indicated on the dates provided, for which he received reimbursement with corporate funds:

| | | |
|---|---|---|
| 11/04/1999 | Bush for President | $500 |

28. J. Michael Wood made $1,000 in political contributions in his own name to the federal committees indicated on the dates provided, for which he received reimbursement with corporate funds:

| | | |
|---|---|---|
| 12/14/1997 | Bill McCollum for Senate | $500 |
| 09/27/1998 | Bill McCollum for Senate | $500 |

29. Raymond C. Southern made $1,500 in political contributions in his own name to the federal committees indicated on the dates provided, for which he received reimbursement with corporate funds:

| 06/25/1999 | Bush for President | $1,000 |
| 02/15/2000 | Tom Gallagher for U.S. Senate | $500 |

30. David Hamlin made $500 in political contributions in his own name to the federal committees indicated on the dates provided, for which he received reimbursement with corporate funds:

| 02/15/2000 | Tom Gallagher for U.S. Senate | $500 |

31. Larry D. Casey made $500 in political contributions in his own name to the federal committees indicated on the dates provided, for which he received reimbursement with corporate funds:

| 02/14/2000 | Tom Gallagher for U.S. Senate | $500 |

32. At the request of Centex Corporation, all of the monies reimbursed with corporate funds have been repaid with interest to Rooney by the employees.

33. There is no evidence that any Centex Corporation executive, or any political committee receiving contributions, knew or understood that Rooney and CCG employees were being reimbursed for political contributions or that CCG was the ultimate source of monies used to make political contributions. When Centex Corporation senior management learned of the reimbursement scheme, it commenced an internal investigation which gave rise to the voluntary disclosure made to the Commission.

34. All of the Respondents fully cooperated with the Commission throughout the course of its investigation. This level of cooperation helped facilitate a timely resolution of the matter.

V. A. Respondents Centex Construction Group, Inc., Centex-Rooney Construction Co., Inc., Bob Moss, Gary Esporrin, Brice Hill, Ken Bailey, Chris Genry, and Mark Layman made or consented to prohibited corporate contributions and contributions in the name of another in violation of 2 U.S.C. §§ 441b(a) and 441f. The Commission made no findings of knowing and willful violations against these Respondents.

V. B. Respondents Bob Moss, Gary Esporrin, Bruce Moldow, Gary Glenewinkel, D.J. McGlothern, Albert Petrangeli, Ted Adams, J. Michael Wood, Raymond Southern, Larry Casey and David Hamlin permitted their names to be used to effect political contributions in violation of 2 U.S.C. § 441f. The Commission made no findings of knowing and willful violations against these Respondents.

VI. Centex Construction Group, Inc., Centex-Rooney Construction Co., Inc., Bob Moss, Gary Esporrin, Brice Hill, Ken Bailey, Chris Genry, and Mark Layman will pay a civil penalty to the Federal Election Commission in the amount of one hundred twelve thousand dollars ($112,000), pursuant to 2 U.S.C. § 437g(a)(5)(B). Respondents will cease and desist from violating 2 U.S.C. §§ 441b and 441f. Further, Respondents waive their rights to a refund of all political contributions from the recipient committees. In addition, Centex Construction Group, Inc. and Centex-Rooney Construction Co., Inc., will instruct the recipient committees to disgorge the prohibited contributions referenced in this Agreement to the U.S. Treasury.

VII. The Conduit Respondents: Bob Moss, Gary Esporrin, Bruce Moldow, Gary Glenewinkel, D.J. McGlothern, Albert Petrangeli, Ted Adams, J. Michael Wood, Raymond

11

Southern, Larry Casey and David Hamlin will pay a civil penalty to the Federal Election Commission in the amount of fifty-six thousand dollars ($56,000) divided pro rata based on the amount of their reimbursed political contributions as identified in paragraphs 21-31, pursuant to 2 U.S.C. § 437g(a)(5)(B). These Respondents will cease and desist from violating 2 U.S.C. § 441f. Further, these Respondents waive their right to a refund of all political contributions from the recipient committees.

VIII. Each Respondent has confirmed that in so far as he is aware, the contributions listed in this Conciliation Agreement represent the entirety of federal political contributions known to have been reimbursed by CCG and/or Rooney. If at any time within the next five years, any Respondent learns of facts which indicate that additional federal political contributions may have been reimbursed using CCG or Rooney funds, that Respondent will immediately report these facts to the Commission. If a Respondent fails to report such information and the Commission learns at any time after the execution of this Agreement that there were additional federal political contributions reimbursed by either CCG or Rooney, the Commission will consider this Conciliation Agreement to have been violated by that Respondent and any such contributions will be subject to further enforcement action by the Commission against CCG, Rooney, and any Respondent involved in the additional contribution. All Respondents agree to waive any applicable statute of limitations for any such action brought by the Commission.

IX. The Commission, on request of anyone filing a complaint under 2 U.S.C. § 437g(a)(1) concerning the matters at issue herein or on its own motion, may review compliance with this agreement. If the Commission believes that this agreement or any requirement thereof has been violated, it may institute a civil action for relief in the United States District Court for the District of Columbia.

12

X. This agreement shall become effective as of the date that all parties hereto have executed same and the Commission has approved the entire agreement.

XI. With the exception of the obligations set forth in Paragraph VIII, Respondents shall have no more than 30 days from the date this agreement becomes effective to comply with and implement the requirements contained in this agreement and to so notify the Commission.

XII. This Conciliation Agreement constitutes the entire agreement between the parties on the matters raised herein, and no other statement, promise, or agreement, either written or oral, made by either party or by agents of either party, that is not contained in this written agreement shall be enforceable.

FOR THE COMMISSION:

Lawrence H. Norton
General Counsel

_12/17/03_
Date

BY: _____
Rhonda J. Vosdingh
Associate General Counsel

Docs Open #5260

FOR THE RESPONDENTS:

_December 10, 2003_
**Date**

_____
Robert S. Litt
Counsel for Centex Construction Group, Inc.,
Centex-Rooney Construction Co., Inc., Brice Hill, and
Chris Genry

_December 10, 2003_
**Date**

_____
Kirk L. Jowers
Counsel for Bob L. Moss

_Dec 8, 2003_
**Date**

_____
John P. Contini
Counsel for Gary Esporrin

_December 8, 2003_
**Date**

_Faith E. Gay_
Faith E. Gay
Counsel for J. Michael Wood,
Raymond Southern, Albert Petrangeli,
Gary Glenewinkel, and Ted Adams

_8 December 2003_
**Date**

_____
Michael S. Pasano
Counsel for Kenneth Bailey, Mark Layman,
Bruce Moldow, Larry Casey, David Hamlin,
and D.J. McGlothern

23.04.406.2850