IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**UNITED STATES OF AMERICA**

v.

**JAY ODOM**                                               **CASE NO:  3:12cr76/LAC**

### UNITED STATES' SENTENCING MEMORANDUM

The United States of America, through undersigned counsel, hereby submits the following in response to defendant's Sentencing Memorandum, filed on April 17, 2013. (Doc. 36). As permitted by the plea agreement, the government addresses in part defendant's claims regarding the sentencing factors outlined in Title 18, United States Code, Section 3553(a).[1]

As the defendant correctly points out, the Presentence Report accurately reflects that he faces an advisory sentencing range of 6-12 months based on a total offense level of 10. This guideline sentence falls within Zone B of the Sentencing Table.

### APPLICATION OF 3553(a) SENTENCING FACTORS

**I.    The nature and circumstances of the offense and history and characteristics of the defendant**

The defendant asserts that although he understands what he did was wrong, he had "no genuine appreciation for the consequences that could result." (Doc. 36, p. 8). A review of the Presentence Report reflects that the defendant has reserved his statement

---

[1] The plea agreement permits the government to "make arguments pertaining to the application of the sentencing guidelines and the considerations set forth in Title 18, United States Code, Section 3553(a), including sentencing recommendations, and whether departure upward or downward is appropriate."

for sentencing, but by his plea agreement, he admitted that he knowingly violated federal law regarding his orchestration and execution of an unlawful scheme to reimburse campaign contributions to a federal presidential candidate. The Presentence Report reflects this conduct was not of recent vintage or restricted to the campaign for which he was charged, but extends back to the 1990's – at all political levels, federal, state and local. (PSR ¶¶ 17, 19, 23, 31, 34, 36, and 61). The defendant claims illegally reimbursing campaign contributions was "common" and "everyone did it" as support for his argument that he did not fully appreciate the seriousness of the offense for which he is scheduled to be sentenced. This argument may ring true for the contributors, who made contributions and were then reimbursed, but fails when applied to the one who orchestrated the activity and provided the reimbursement money, thereby avoiding the transparency and limitations on the influence any single donor can have on the outcome of an election. The defendant, through his conduit campaign contributions, avoided public knowledge and scrutiny of the substantial financial campaign support he provided through his conduits and straw-donors.

## II. The need for the sentence to reflect the seriousness of the offense and promote respect for the law, and to provide just punishment for the offense

The defendant faces sentencing on an election law violation that strikes at the heart of the citizens' faith in our electoral system and the elected officials who govern. The defendant took advantage of his relationship with friends, employees and business associates, many of whom depended on him for income for use as straw-donors.

### III.     The need to afford adequate deterrence to criminal conduct

The defendant deserves a sentence that recognizes the serious nature of his crime and one that will deter others – well-heeled individuals who are tempted to use their money to influence elections.  Media attention to the defendant's charges and plea is certainly valuable toward deterrence, but an appropriate sentence will be a prime factor in deterring future similar conduct by others.  Uncovering election campaign fraud without the cooperation of someone involved in the scheme is exceedingly difficult with many offenses going undetected and the perpetrators unpunished.  An appropriate sentence of sufficient severity will help promote respect for the law and deter future abuses by other individuals seeking improperly to influence the election process.

### IV.     The sentence will provide the defendant with needed educational, medical care, and other correctional treatment in the most effective manner

The defendant's medical condition, as described in the PSR, can be adequately addressed if confinement is ordered.  Clearly the Federal Bureau of Prisons has addressed medical issues of a much more serious nature in the past.  Contrary to the defendant's claims, his treatment and the monitoring of his medication can be handled in a custodial setting.

### V.     The need to avoid unwanted sentence disparities among defendants with similar records who have been found guilty of similar conduct

As the court is well aware, sentencing is conducted on an individual case-by-case basis.  The defendant has cited numerous election law cases in which non-custodial sentences were imposed.  Again, noting the individualized nature of sentences, the

3

government provides the following list of federal election law cases in which imprisonment as part of the sentence was imposed.

- *United States v. Joseph Bigica* (D.N.J.): On May 9, 2012, Bigica pleaded guilty to, among other things, conspiring to violate the FECA.  Between April 2005 and May 2009, Bigica used 19 straw donors – including family members, business associates and others – to make $98,600 in illegal contributions to the campaign committee of a federal candidate.  Bigica reimbursed the straw donors using checks drawn on accounts in the name of his spouse or companies he controlled.  Bigica was sentenced to 60 months in prison.

- *United States v. Marybeth Feiss* (S.D. Fla.): On February 17, 2012, Feiss pleaded guilty to conspiracy to violate FECA and to defraud the United States.  Feiss, an administrative assistant to an attorney named Scott Rothstein, helped Rothstein to organize events, such as functions for political candidates, and assisted in the collection of campaign contributions made at those events.  Feiss also made contributions to various political campaigns that Rothstein then reimbursed using money from his law firm.  Feiss was sentenced to 6 months in prison.

- *United States v. Christopher Tigani* (D. Del): On June 9, 2011, Tigani, the former President of N-K-S Distributors, Inc. ("NKS"), pleaded guilty to violating FECA by soliciting numerous NKS employees to make at least $219,800 in political contributions to candidates running for President; U.S. Senate; Governor; Lieutenant Governor, Treasurer of Delaware; Delaware Senate; and Delaware General Assembly.  Tigani used company non-payroll checks to reimburse the conduits for the contributions they made.  Tigani was sentenced to 2 years in prison.

- *United States v. Pierce O'Donnell* (C.D. Cal.): On February 4, 2011, O'Donnell pleaded guilty to making illegal conduit contributions to a political committee supporting the election of a presidential candidate.  O'Donnell solicited employees of his law firm and at least one relative to make contributions to the campaign, which he then reimbursed.  O'Donnell was sentenced to 2 months in prison.

- *United States v. Joseph Vas & Melvin Ramos* (D. N.J.):  In October 2010, Vas, a former mayor of Perth Amboy, was convicted by a jury of, among other things, accepting contributions to a federal candidate in the names of others; Ramos, Vas's longtime aide, was convicted of, among other things, making contributions to a federal candidate in the names of others and making false statements to the FEC.  Vas and Ramos misappropriated $360,000 in affordable housing funds, $75,000 of which Vas used to fund his 2006 congressional primary campaign.

Ramos used four straw donors to contribute $2,100 each to Vas' campaign (contributions Vas knew to have been obtained in violation to federal law), then filed a false and fraudulent reports with the FEC regarding the contributions. Vas was sentenced to 2 years in prison; Ramos was sentenced to 37 months in prison.

- *United States v. Paul Magliochetti & Mark Magliochetti* (E.D. Va): On September 24, 2010, Magliochetti, the founder and president of PMA Group Inc., a lobbying firm, pleaded guilty to making hundreds of thousands of dollars in illegal campaign contributions and causing false statements to the FEC. From 2003 through 2008, Magliochetti used members of his family, friends and PMA lobbyists to make unlawful campaign contributions. Magliochetti instructed the conduits to write checks out of their personal checking accounts to specific candidates for federal office; Magliochetti advanced funds to or reimbursed these individuals using personal and corporate monies. Separately, Magliochetti's son pleaded guilty to one misdemeanor count of making illegal corporate campaign contributions. Magliochetti was sentenced to 27 months in prison; his son was sentenced to 14 days in prison plus 5 ½ months of home confinement.

## CONCLUSION

The government submits this response to the application of the sentencing factors under Title 18, United States Code, Section 3553(a) as provided in the plea agreement. The government accepts that, pursuant to the plea agreement, the sentence for this defendant remains entirely at the court's discretion.

Respectfully submitted,

| | |
|---|---|
| ROBERT O. DAVIS | JACK SMITH |
| Acting United States Attorney | Chief, Public Integrity Section |
| Under Authority Conferred by | United States Department of Justice |
| 28 U.S.C. § 515 | |
| | |
| /s/ Randall J. Hensel | /s/ Brian K. Kidd |
| RANDALL J. HENSEL | BRIAN K. KIDD |
| Assistant United States Attorney | Trial Attorney |
| | Public Integrity Section |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing United States' Sentencing Memorandum with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record for the defendant this 22nd day of April, 2013.

/s/ Randall J. Hensel
RANDALL J. HENSEL
Assistant United States Attorney

cc: Larry Simpson